United States versus Washington number 21-2740 and you may would you like to reserve some time for rebuttal if I could three minutes that would be granted good morning may it please the court my name is Christy Martin I your honor to ask that we address two issues of involving the constitutional rights of a defendant at trial I'll begin with the the issue of waiver of counsel both issues have a substantial body of precedent to guide district courts in these situations to guide this court in its review to begin we that we have a presumption a default presumption that counsel will be provided to a defendant and that can only be waived with a knowing and intelligent waiver as you're aware this court yes is McFadden still good law in this area and I'm specifically interested in your views as to whether we can take account of the your honor McFadden has not been explicitly overruled McFadden took place in 1980 just a couple years later in United States versus wealthy and consistently thereafter the case has been held to its facts the best that I could I could say as far as being overruled we have a lot of precedent since then which really emphasizes that a rote speech or a perfunctory speech without reflection is not sufficient I think that McFadden at the time was being looked at under a different standard and the court did at that time indicate that it felt that his waiver was knowing in bond and voluntary which intelligent which is what the basic standard is I guess so that's a long way of answering your question but since that time we've had case after case after case we have wealthy 1982 all the way up through Taylor last year this court has consistently said that we do not look to the entire record to find that knowing intelligent waiver and this is for good reason and we don't want courts to have to be looking at fuzzy pieces of the record and different proceedings and drawing lines about how long ago what type of proceeding but in this case the time difference was about two months the proceeding that was conducted at trial number one was a pepper's type threat a type proceeding it was repeated almost verbatim in trial number two the only difference really was the defendants responses and the responses different different only in this way a repeated focus on his claimed lack of access to discovery or lack of review of discovery with their adversary so doesn't this make it more like a situation where we should look to consider what's happening on exactly the same type of proceeding that only happened about 60 days earlier oh your honor I could understand the instinct to want to do that the problem is and we have precedent in 2006 the court said we look at the time a defendant seeks to waive counsel we know that circumstances change issues change frankly competency and states of mind change and I don't think I don't think there's any way to craft an easily administrable rule about what we can and cannot look at I'll add in this situation the first colloquy was not really any more successful mr. what was different was mr. Washington said he wanted an attorney just didn't want the attorney with him in colloquy number two he repeatedly said I want to proceed per se is that no we're two different that you're correct their responses were different and the outcomes were different obviously yeah it is temporarily very close what's the cutoff I mean do we have to every day a trial do the same thing to make sure this day he didn't change his mind we don't your honor and there's I think when we're looking at the same proceeding and I'm not in a position to draw this line there's not the facts here but for example as in the Santos case which was not published at arraignment there was a intelligent waiver the court was still proceeding with the same case and the court court actually took it up the district court took it upon itself to do another colloquy and it was clear that that was not necessary I think if we had pre-trial motions and the case was merely proceeding without any sort of hurdles or indications that there was a problem you may be able to in the same proceeding but to try to sort of pick and choose what will and will not be efficient I think is less workable here especially in a difficult situation that Mr. Washington presented the court needed to be very clear and if I may the court had a very clear decision in front of it in Taylor this court adopted what was argued by the government in that case that where a defendant creates a right to self-representation the district court unfortunately here did not recognize that but I think there is a very bright line to be drawn here that if a defendant will not participate there's no way that the court will find a knowing way. You've been talking about Taylor it seems that we explain that district courts need not conduct an actual colloquy a monologue might work why does that not apply here? Well your honor the issue of monologue and there is I know the government relies on a 6th circuit case and that circuit does have I'm sorry 11th circuit they do have a different standard there they accept that a monologue in certain circumstances may be sufficient and keeping in mind that they still have that knowing and intelligent finding that has to be made this court has never accepted that this court in Virgin Island versus Charles and everything sense and Taylor said a rote speech or a perfunctory questioning is not going to be sufficient because what we have to look at is really what the defendant knows. Well let's do that why don't we do that and we'll focus only on trial number two for the purposes of this inquiry. The district court addressed the defendant asked each of the required questions you agree you agree with that? Yes. Okay the defendant sometimes responded in a way that would reflect an answer to the court's question but even during the course of the colloquy the court asked are you going to answer my questions he said no. So is a judge supposed to then override a multiple proclamation I want to proceed pro se when you have a defendant who's been recalcitrant that way? Aren't we going to see the opposite on appeal if we have a defendant who then says I'm going to force out you to have counsel then what is a court of appeals going to do when that record reflects repeated requests to proceed pro se when the kinds of things he didn't respond to and I'm sorry this is going on a little long we're more like warnings let me tell you about the risks let me tell you about the risks you don't know the rules I can't advise you there are defenses a lawyer might think of it's a warning that's being given and shouldn't we find that to be sufficient if we have a defendant who's demonstrating engagement with the court just wanting to talk about something different which is what I think occurred here. That is I think exactly what occurred here and at all times he appeared to be having a wholly different conversation because we're looking at what he knows and understands those were the important questions and I think we cannot just like with the clear and unequivocal request if there's any hesitation or retreat from that the court cannot find that request and we have to be consistent here very similar to like a rule 11 guilty plea for example if there is one question that we cannot get the defendant passed then that plea cannot go forward. Do you want us to adopt a test that if any one of the PEPPERS questions or FRERETA questions is not responded to with either a yes or no or something that appears like they're engaged in the same subject no pro se status. I would agree with that. That's the test you want to blank. I do love a bright line test. I will say your honor. It's got to be a responsive question to each and every question is what you're saying. Some acknowledgment that the defendant is participating. Absolutely I don't think that is true. Are you saying that this record suggests that Mr. Washington was not participating in the conversation with the court. He was not when he spoke he was having an entirely different conversation unfortunately. To answer your other question we did have the opposite situation in which Mr. Taylor the district court had very valid no doubt concerns about the defendant's sovereign citizen arguments and but and terminated effectively the PEPPERS colloquy because of those concerns and Mr. Taylor went forward with counsel and what this court said was that he had not stymied the colloquy. He had not put an end to it. He was participating. The district court with the colloquy. So it was sort of the opposite situation that you have here. Could I ask about shackling shackling subject. Of course. What kind of proceeding do you think the district court should have held under these facts. Now there's no doubt that a court can consider the entire record in making a decision about shackling. So what kind of proceeding do you think this district court judge should have had before making the shackling decision. Your Honor the proceeding does not have to be long. I think the important thing here is that the defense and Mr. Washington was represented at that moment when the defense objected is the defense needs to be given an opportunity to understand the basis for the shackling and to make any arguments against it. But here we have because we can consider the first trial we have a record of the tussle in connection with the fingerprinting. We have a report of a threatening comment made to his then retained counsel during trial number one. So people are on notice of what had occurred. What more should the district court have done. Well I think I mean it was two months later and understandably the district court had seen a lot of cases since that time. So we don't know exactly what the district court was thinking in particular because it was an ex parte discussion. What the court did tell us was that he was simply going to take the advice of the marshals and that is not okay. But didn't he also say if circumstances change I may revisit. He did. Doesn't that reflect he was maybe cognizant of a recommendation but it was his decision and his alone as to whether to continue. It was incumbent upon him to make that clear on the record what that basis was and why he was accepting that recommendation. I understand the government obviously we have slightly divergent perspectives on how serious the record was. I do not I certainly do not question that he had to be forced to be fingerprinted some two months earlier and that there was as we know from the first colloquy some serious problems with his relationship with first counsel. Those were not at issue at this point. And I think we simply just we don't know. We cannot. The second I do want to address the second incident which involved him being carried to the witness stand. I can't emphasize enough that when we read the trial transcript it's very clear that that was that the actual shackling was a root cause of that incident and we cannot use that to justify in retrospect the court's decision. Mr. Washington vocalized. I apologize. I see that I'm out of time. He vocalized a lot of frustration in his efforts to represent himself. But at no other point was there any indication that that that that frustration or exasperation was turning into a physical dynamic until that moment. Judge Sirica has a question going back to the to the first question that we asked you. Taylor recommended that standby counsel be appointed in these kinds of situations. And in fact there was standby counsel in this case. To what to what extent did that. Should we take that into account in deciding whether the waiver was proper. Your Honor I believe in the older cases you see the court mentioning the presence of standard practice early on to have standby counsel. At this point I'm not aware of any cases where standby counsel is not appointed. I believe that is a default position if you will. And I don't think it had I don't think that it aided Mr. Washington in any way here because he quite frankly just had not I would say there were a couple of objections when the jury was not present that Ms. Jayaraman asked to put on the record. And also I believe she notified the court a couple of times when he wanted to request something. But there wasn't this was not a situation where standby counsel opened and closed or participated in the question. It's a factual one. I wasn't quite sure about in terms of your position. Back to the fingerprinting incident. Do you agree that your client was tased. Yes. OK. Yeah. I was not there. And the counsel who was involved was private counsel prior to our appointment. I do understand that that was the Thank you. Good morning Your Honor. May it please the court. Robert Zaws on behalf of the government. With respect to the pro se issue I think there's a lot to say. But the important point is that the colloquy is a specific colloquy is not required. It's never been required by the Supreme Court. I think this court did a very good job in the district court. I can say that that really was an excellent service and it's been very helpful to district courts to have a procedure that they can follow. But it's never been and this court has repeatedly said this is not required. This is a suggestion. And the reason it's not required is we go back to the Supreme Court precedent on what this is all about. What this is all about is simply assuring that the defendant is knowingly and intelligently waiving his very important right to counsel. And what this court said in the Peppers case is what it comes down to would not the specific questions. What it comes down to is does has he clearly and unequivocally expressed his desire to represent himself. Does he understand the nature of the charges the range of possible punishments the potential defenses technical problems he may encounter. And is he competent to stand trial. That's what this is all about. And when you look at this record there's no question that Judge Bartle had a basis for finding those requirements met. Judge Bartle made a specific finding that Mr. Washington was knowingly and intelligently waiving his right to counsel. What was the factual basis for that in light of the answers that Mr. Washington gave. And I do want to address this whole record question because it's important. And Judge Sirica's question is very important about whether McFadden is still good law. McFadden of course is good law. It's never been overturned by the court. And this court said to McFadden that you do look to the whole record to see what the defendant knew. That's consistent with Supreme Court precedent in a number of areas. The one that comes to mind immediately when I was listening to my friend Ms. Martin was the guilty plea context. I think someone mentioned Rule 11. And of course the Supreme Court has held that in looking at the voluntariness of a plea you look at the entire record. That's sort of basic. But what's striking about this case is that when you look at the whole record in this case you're not just pulling tidbits from different moments in the proceedings to say did he know the punishment. Did he know the maximum punishment was. In this case when you look at the full record what you're looking at is the exact same colloquy in the exact same circumstance on the exact same issue that took place 60 days before. We really don't have a precedent like that this court has addressed in a precedential opinion. But it has to be that of course we can look at that in answering these basic questions. Does he know the nature of the charges. Does he know what he's facing. Counsel your adversary your friend says well he could have changed his mind. It was different. It was a different trial. He may have changed his mind in the interim. Well sure. And it was really probative. And this is why we have incredibly experienced knowledgeable judges like Judge Bartle who assesses what's before him. Judge Bartle could certainly look at and say you know well this is a different. I think he has changed his mind. But that's not the whole proceeding. He knew he had gone over with it. And you know if you read this record it's pretty clear why Judge Bartle made this conclusion. This person was just being manipulative. I mean he was being obstructionist and difficult at every stage. I think Judge Bartle rather than criticism perhaps deserves some kind of award for for working through the proceedings. And I'll say the same. I should have introduced my colleague Miss Kibitz who tried the case who is been essential in preparing this appeal as well. I'm not saying she's going to get an award but I will say that about Judge Bartle. When you look at this I mean there was one moment in the in the colloquy where Judge Bartle says this was on page 471. He says I advise you in my opinion that a trained lawyer will defend you better. I think it's unwise. You're not familiar with court procedure. You're not familiar with the rules of evidence. And Mr. Kibitz never answered to the question. I mean he's just manipulating the record here. And that's what allows Judge, part of what allows Judge Bartle to make this final conclusion. But should we look at it in the opposite direction? Chief Judge Shigarash just authored an opinion in United States v. Noble where we had a non-responsive, fully non-responsive defendant just wouldn't participate in the process. And the cases that were relied upon in that decision included the non-responsive defendant. And the other cases are if you're not going to participate in the process you don't have the privilege of proceeding per se. How do we reconcile the obstructive defendant who loses that privilege with someone like an individual you've described as, I think you used the word manipulative. Well I mean Your Honor I think is touching on the real fundamental problem here which is that we have two sides of a coin. We have the right to the moment if he is forced to proceed with counsel here, we know exactly what appeal we would be responding to once he's convicted at trial. And so the judge has to be very careful here and decide what is the situation. If that's the situation in the judge's determination that this person is being obstructionist and is waiving his right to represent himself, that may be appropriate based on the particular record. This record though is very clear in the other direction. This record at the second trial he repeatedly says at the beginning and at the end, I want to represent myself. And then he's told everything he needs to be told, what he's already been told before and acknowledged before. And at the end he says the same thing. This only starts, and it's page 462, it only starts when he says I'm going to proceed pro se. That's what kicks this off. That's an unequivocal statement. And then the judge does all the right things. I want to say one thing about this idea of a rote monologue, which is not what happened here. There's a lot of give and take here. But even a monologue will be sufficient if the judge determines that the defendant knows his rights, knows what he's accused of, knows what the possible punishments are. Because when you think about it, the statements that are being made here are not designed to give the person a legal education. When you're saying to him, you don't understand the rules of evidence, you don't understand the rules of criminal procedure, sentencing guidelines, the goal of this proceeding is not to come out of it where the person has received the education that took the rest of us years to achieve. It's to point out to him, you don't know these things. And that is accomplished by the monologue part of this colloquy. So as long as a warning is given, and at least the record suggests the defendant heard those warnings, and we can infer understood them from other responses to other matters, that's sufficient? Yes. If the other, if the basic requirements are met that this Court has set out and the Supreme Court has set out, that he knows the charges, he knows the punishments, that was the problem in the Booker case, which I unsuccessfully argued 10 years ago. The Booker case was one in which we said, well, look at the whole record. He obviously knows what he's facing. But the problem there was the judge made mistakes during the colloquy itself. And so did the government. It wasn't only the judge's fault. But the judge misstated the maximum punishment. And so the defendant went into this not knowing that he was looking at 20 years more than he was actually looking at. And so this Court held, you can't look at the rest of the record. He's misadvised right in this colloquy. Nothing like that happened here. Here you had two fully accurate colloquies that take place 60 days apart, that fully inform him, and then a clear record on which Judge Bartle can determine that he is knowingly and intelligently waiving his right to punish. Your friend across the aisle pointed out the utility of a bright-line rule. Does a Pepper's colloquy ever expire? Should it? And if so, when? Well, maybe. But I think that would be a factual question for the District Judge. And I think this Court should defer to whatever the determination is. It can't be that the bright-line rule suggested by my friend is correct. It can't be that you have to answer every single question of a colloquy. It can't be that you have to answer every single question of a colloquy. The colloquy that this Court itself has said is not a required colloquy, it's just a suggestion. It cannot be that you then go through that proceeding, you have one question wrong, and what's going to happen is we're going to be sending it back over and over for trial courts to retry cases. There's no precedent for that. There's no logic to that. What it's all about is, is this knowing and intelligent, knowing what he's facing, and it was. I'll touch on the shackling issue if the Court wishes. Is harmless error your best argument in this case? With respect to shackling, Your Honor, I don't think so. I think that, I mean, it is a very strong argument. But I think the Judge made the finding. The Judge did not take direction from the Marshals. The statement of the Court on page 457 is that, it's my understanding the Marshals have requested the defendant be in shackling. I will therefore take the advice of the Marshals. That's perfectly appropriate, but that is the Judge's decision. He's not... He said he had done more than just that. Should he have given other reasons? I don't know that he needs to give other reasons. I think if there had been an objection, that certainly there then would have been a fuller record, and we've basically gone over what that record would be, that he misbehaved during the first trial. He was in shackles during the first trial without objection, because he had to be tased when he needed to be fingerprinted, because he had threatened his lawyer. And so certainly the Judge could have made more findings right away, but he wasn't asked to. And then later on, it's very interesting when you have that later incident, which is just a melee in the courtroom, where he has to be dragged to the stand, and 10 Marshals flood the room. When that happens, it's very interesting. When that happens, later on, Mr. Washington does make an objection. He says to the Court, I shouldn't be in shackles, and the Judge's response is, after what you just did? So yes, if you ask him for a fuller record, I think there could be. I will say on that point, though, that if this Court has any concern about the extent of the findings, the remedy should not be a new trial. It should not be a windfall like that. The answer is simply to send it back to Judge Bartle and ask him to make findings of all the things that happened and what drove his decision. I think we all know what those findings would look like and what that decision would look like, and I don't think it's necessary on this record. We do also, as your Honor suggests, have a very strong argument with respect to harmless error. The jury would never have known that Mr. Washington was in shackles, had he not decided to tell them himself. And other than that, this was an ordinary proceeding. The important rule there... And there was a curative instruction immediately, right? Oh, absolutely. And there, just like on the representation side, where we have that clear list from Peppers of what's really required, we have a clear statement from this Court in sides v. Cherry of what we look at. What we look at is the strength of the case in favor of the prevailing party, the effect the restraints might have had in light of the nature of the issues and the evidence involved in the trial, whether measures were taken to prevent the jury from viewing the restraints, and whether the district court instructed the jury. On all of those points, any error here would be harmless. The government had an exceptionally strong case. It was a short trial. It was essentially unrebutted. Mr. Washington kept saying he had witnesses that never materialized. He had an entire story of what happened that basically was plainly false, that he had witnesses that never materialized, that he had friends there, and he was at a club, and that they put him in the car, and that's where he was found, when in fact the club was closed. There was nobody there at the time except for him. And that, of course, is why no defense witnesses materialized. So it's a very strong case. The jury, again, would never have known that he was in shackles. His mention of it was brief. This Court has stated that even a brief view of a defendant in shackles is not necessarily prejudicial. And, of course, the Court gave an immediate curative instruction. The only suggestion that the defense makes in rebuttal to this, in their reply brief, is, well, we can't know what impact being in shackles had on him as he maintained his defense. But there's just nothing in the record to show that he was inhibited in any way in presenting, in fact, the same defense that he presented at the first trial. In fact, a lot of the questions were quite similar to the first trial, right? Exactly, completely. And, in fact, he actually read parts of the record from the first trial himself. He tried to, right? Right. Well, he actually did. His opening statement, for example, Your Honor, was the opening statement that was given by defense counsel at the first trial that he read himself at the second trial. So what the defense is basically suggesting here is that there has to be some kind of per se rule, that any time someone is in shackles, we can't know what effect it had on them, and therefore we have to do the thing over again. And that's not the case. You talked to us about sides and the four items to be considered. One of the other things it talks about in that case is that there should be a balancing of the security against the prejudice. We don't see any balancing actually happening on the record in the district court. And there was, at the second trial, by his then, before he was permitted to go per se, counsel objecting to, requesting that shackles be removed, and then the conversation that you've just recited at 457 to 458 occurred. But we don't have any balancing. We don't see that balancing. Is that problematic under sides? Again, I think that the court's findings here are implicit. I think that we have a very experienced judge who's been dealing with numerous incidents in this case. It's not just one. And I think it's implicit that the court is finding that the marshal's recommendation should be rejected. I don't think that's a bad statement. I think it could readily obtain it. But I think it's implicit, and that in any event, the error is harmless. Thank you. Thank you very much. Thank you. I think probably the best place for me to start is that these are very complicated issues. And I think that we have to look at them as a group of defendants when we deal with these issues. As far back as United States v. Welty, this court recognized, we understand and sympathize with the frustration and exasperation of the district court. Even a well-founded suspicion of disingenuous or manipulative acts are not substitutes for the proper inquiries. I think that's because we cannot get into anyone's mind, especially Mr. Washington's mind, and what was the nature of his actions in terms of his frustration and exasperation, whether well-founded or not, that he thought he was being railroaded in some way. I would suggest to the court that is certainly not a basis to find that the inquiry in this case was sufficient. Your Honor, I think you sort of invited me to share this. And I looked back at McFadden. And in that case, I will add that the standby counsel did open and close and examine the defendant in that case. And again, it has been held to its facts ever since that time. I don't think Judge Bartle's inclination here was not to find a waiver. And then it was to find a waiver because this was such a complicated situation. It was actually the government at the end of the colloquy here that said, Your Honor, we don't think you can find this waiver. And he said, I don't know what to do. We cannot draw and quarter them. He didn't know what to do. He was not confident about the colloquy. And I think that's very telling from the record, and also the government's position in Taylor, that where a defendant, and this is a quote, creates a verbal impasse with the judge or defendant's behavior prevents a fulsome colloquy. Whether it's the Pepper's Colloquy or just as Mr. Zausmer talked about, the basic requirements of the Supreme Court is put in place. When the defendant will not engage, we simply cannot find a knowing and intelligent waiver there. So let's play this out. We're in the courtroom. We have the defendant being asked questions by the court. The defendant chooses to engage in a similar type of, I don't really want to talk about the federalism evidence, I want to talk about the discovery that my counsel before the waiver showed me. And he just goes off and off and off. But then says, I want to be pro se. And counsel is still sitting there. And counsel's like pulling out. If you really want to go pro se, you better answer these questions. I'm not listening to you. You can't be trusted. You just committed perjury to the court. What is a district court judge supposed to do then? Because that's the scenario you're asking us to draw out, is he's got to answer the questions. He's not responding to the court. He's got to answer the questions. So if you're in an apparently poor relationship with counsel, what do you do? Well, I'm not suggesting any required type of answer. I think if the court says, you understand that I cannot find that you are knowingly and intelligently waiving your right to counsel if you do not engage in this colloquy and show me that you understand what's happening. I think that is fair warning, that a defendant has to just engage, show that they understand what is going on. Show them what is happening. Mr. Washington, frankly, one cannot tell from this record where his mind was or what he was thinking about. And we just can't find that waiver here. Is there any question about his competence in the record? Your Honor, the government asked that he be evaluated prior to sentencing. And while he does have mental health issues, he was found incompetent to continue. But he was uncooperative in that effort, in that evaluation? He was uncooperative in that effort. That's correct. And at page 471, the judge says you're not familiar with the rules of procedure and you're not familiar with the rules of evidence response. Well, I never answered to the question. I mean, he knows what's happening and he's not responding. Are you asking us to respond? I'm going to end this. If you do not participate and you will proceed with counsel. Because counsel is the default presumptive position. We are looking to whether there is a waiver. And we simply can't find. And there seems to be some confusion about the clear and unambiguous request, which there absolutely was here, no question. And whether he can get through and show a knowing and intelligent waiver. Very briefly, if I may, with regard to the prejudice, with the shackling, I didn't address it as much as obviously I would have liked to. But I just want to say, I mean, as far back as, I mean, there are citations to the 1800s in DEC about the intangible difficulties that people experience mentally. I, as an attorney, could never be so effective. If I had shackles on my legs. And when we, I just, I think the government is downplaying that. But there is no question about the role they play in the confusion, the exasperation that took place here. Thank you, counsel. We'll take this case under advisement and thank counsel for their excellent written and oral submissions. Thank you so much. Be well.